Good morning. May it please the Court. My name is Ali Kazemi. I'm with Orrick, Harrington & Sutcliffe, and I represent the petitioner Michael A. Sims. Because both parties have already briefed the issues in this case, I will focus on three points in particular. First, federal law, as determined by the U.S. Supreme Court, clearly establishes that the trial judge does have a sua sponte duty to inquire into juror bias. Second, the state court's denial of petitioner's juror bias claim was an unreasonable application of the clearly established federal law. And third, I'd like to address possible remedies in this case. Depending on the extent to which the court believes bias has been established based on the record, the possible remedies are either reversal of Mr. Sims' conviction or a remand to the trial court for an appropriate inquiry into the issue. With regard to the first issue, the controlling federal law in the case, two rules are well established under Phillips, Remmer, and Ervin. Those rules are that, first, petitioner is entitled to a fair trial by an impartial jury, and that, second, in order to protect petitioner's right to a fair trial by an impartial jury, the trial judge does have a sua sponte duty to inquire into potential juror bias claims. Phillips explains... Counsel, this is a habeas case. Right. So we're guided by clearly established Supreme Court precedent. Correct. What Supreme Court precedent are you relying upon to support your assertion that a judge has a sua sponte obligation to inquire into juror prejudice? Sure. Phillips in particular explains that a trial judge must be, quote, ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences. Where in that case does it impose a sua sponte obligation? Well, I believe that the phrase ever watchful at the very least implies that there is a sua sponte obligation, and that is how the case has been applied and interpreted in the Ninth Circuit. You're suggesting by inquire that it's not merely enough that a judge respond to questions from a jury, but that he must conduct an evidentiary hearing and poll the jurors to find out whether they're nervous or not about the release of their identity? That is what it is. And all of that comes out of those words ever watchful? That's correct. And also the Ninth Circuit in applying these cases has found that that duty does exist. What duty does exist? The sua sponte duty. Okay. And what case are you relying on for that? Dyer, citing Remmer, holds that a court confronted with a juror-biased claim must undertake an investigation of the relevant facts and circumstances. Okay. Where's the juror bias? What were the facts in Dyer? In Dyer, the juror received a phone call during the course of the trial. Okay. A phone call during the course of the trial indicating it was a one-sentence phone call, sort of a crank call, Is juror nervousness sufficient to conclude that we've got juror bias? Well, that juror was actually dismissed in Dyer. But in our case, in your case, in Finn's case, is juror nervousness sufficient to demonstrate juror bias and trigger the duty to inquire? You're talking about a duty to – your whole problem here is that you didn't get a hearing, and that's really what you want out of this, is a hearing. Correct. We're not prejudging how the hearing might come out, how the court might resolve that, but we want to fault the judge for not having conducted a hearing. Correct. The facts in this case indicated clearly that there was some fear, and, in fact, it was significant fear by the jurors. They sent not one but two inquiries to the judge asking whether the petitioner, the defendant at the time of trial, had access to their personal information. In the research I conducted on this issue, I had never found a single case in which two such inquiries were sent. It was unusual and should have triggered or at least raised a red flag in the judge's mind that something wasn't missing in the deliberations room. Now, we know about fears, and it is an emotion that can cloud logic. Similar to an emotion such as love, if the judge had been put on notice that the jurors were in love with a defendant petitioner in this case, surely the judge would have had concerns as to the ability of the jurors to fairly evaluate and weigh the evidence presented in the case. Similarly, where the judge is put on notice that fear is tainting the deliberations, the judge should inquire into how that fear is affecting deliberations. Now, run through the logic of human emotions as to how fear would have prejudiced your client here. Okay. Let's just say hypothetically. The problem in this case, of course, is that we don't know what happened in the deliberations room. We don't know what caused the jurors' fear of my client. We don't know what effect that fear had on deliberations. But let's just say hypothetically that the jurors were very afraid of the client. This would affect their ability to fairly weigh the evidence that was presented in the case. Obviously, they have to decide that my client is guilty beyond a reasonable doubt. If they're very fearful of the client, it makes them more likely to convict the client. Why would it make them more likely? That's contrary to what both courts found. I understand the California Court of Appeal found that fear would actually weigh in favor of acquittal, and that's also what Respondent argues. But in United States v. Angulo, a Ninth Circuit case decided several years ago, the Court found in a very similar situation that jurors who were fearful of the defendant in the case may have been more likely to convict, and therefore the case was remanded to the State court for hearing on the issue. You continue to refer to our cases, and we thank you for that because we think they're good cases. But frequently, our cases are inconsistent with or are covering areas other than what the Supreme Court has covered. How do you get a Supreme Court determination that when there is a problem, that sua sponte, the judge must, in a case such as this, hold a hearing? Which Supreme Court case says that? Well, on this point, I do agree with Respondent that the Supreme Court precedent isn't as clear as to when the duty to inquire is actually triggered. Isn't that the answer to it? I mean, suppose we would, if it was a Federal case, do something. If the Supreme Court hasn't gone that far, doesn't that answer the question? That is, in habeas corpus, it's what the Supreme Court says. That's what the statute tells us to do. Well, under EDPA, I understand that the State trial courts, the State appellate court's ruling must be contrary to or an unreasonable application of U.S. Supreme Court precedent. But in a case cited by Respondent, I believe the case was Yarborough, it states that where the rule is not entirely clear, the courts are entitled to slightly more leeway. I think the Supreme Court is clear that a sua sponte duty exists to the extent it does not define exactly when it is triggered. I think we can at least look to Ninth Circuit precedent for some guidance on when the duty would be triggered. But we just did a case just to the contrary, a case involving how late it can go that you want to represent yourself. And the Ninth Circuit rule is it has to do with when we start the trial. The Supreme Court hasn't done that, and we said the State doesn't have to follow the Ninth Circuit rule. How are we allowed to use a Ninth Circuit case to fill in areas the Supreme Court hasn't pronounced the law on in habeas? No. Again, under AEDPA, I realize that we can't rely on the Ninth Circuit precedent exclusively, but I do think we can look for it, look to it for some guidance in interpreting the Supreme Court precedent. The Supreme Court does establish that the sua sponte duty exists, and I think on that basis alone, we could conclude that the trial court judge in this case should have launched an action. You just told us that the Supreme Court precedent does establish the sua sponte. I thought in response to Judge Rawlinson's question that you told us that all came out of the words ever watchful. I did, and I believe that the Supreme Court hasn't said you have a sua sponte duty to conduct an investigatory hearing, some kind of a hearing. The research that I've conducted, I could not find a case directly on point in the same manner that Dyer v. Calderon is in the Ninth Circuit, and I understand  However, based on the term ever watchful, I think the duty can at least be implied. And to imply that, you want to use our Ninth Circuit case, in that case? As guidance in interpreting the Supreme Court case. Now, the State courts, I'd also like to address the State courts' application of the rule in this case. The State court, the California Court of Appeal, did correctly identify the initial principle, which was that the trial court judge did have a sua sponte duty to inquire. At least that was the California Court of Appeal's opinion. The flaw in their opinion is that they then went on to deny relief on the basis that Petitioner could not show prejudice. But the Supreme Court is very clear in Rose v. Clark that where a judge is biased, excuse me, a juror is biased, this constitutes a structural error that mandates reversal to the extent that the California Court of Appeal argued that because prejudice couldn't be proven, the Petitioner was not entitled to relief. This is clearly an unreasonable application of the correctly governing principle. With regard, again, to the California Court of Appeal's decision that fear had to have weighed in favor of acquittal, again, I would cite to U.S. v. Angolo. Granted, it is a Ninth Circuit case, but it found the opposite. Also, in Remmer, the Supreme Court was clear that where a court's opinion is not based on an adequate record but is instead speculation, that state court's opinion is not entitled to the same degree of deference it normally would be. And in this case, I would argue that the state court's opinion was sheer speculation. The court simply stated that fear did not affect deliberations but did not give a basis for its decision. Finally, I'd like to cite Brand, which holds that, quote, even in cases where the government may be correct, that a particular incident does not conclusively establish bias, where the record does not show in enough detail what happened, it is impossible to know what the effect was without a hearing. Counsel, let me just ask you, did you say the California Court of Appeal found that the court, trial court, should have made an inquiry? No, it found that it should not have on the basis that Petitioner could not prove prejudice. Okay. And that is clearly not part of the analysis under U.S. Supreme Court precedent. If there's a presence of a biased juror, it is structural error. The question the Court of Appeal should have faced was whether the evidence was sufficient to trigger a juror-biased inquiry. Well, I thought the California Court of Appeal said we need not even determine whether or not the trial court had a further duty to inquire, because even if it did, the failure to do so was not prejudice. That is what they held. But what I'm arguing is that it's a basic fundamental of our criminal justice system, that every defendant is entitled to a trial by an impartial jury, regardless of the amount of evidence presented against that defendant. It could be voluminous evidence. There could be confessions, multiple eyewitnesses, DNA evidence. In any event, every defendant is entitled to trial by an impartial jury. And what the California Court of Appeal said is that the juror-biased inquiry was not relevant because of prejudice, and it based that prejudice argument on the evidence presented against the defendant at trial, and that's where their opinion was flawed. All right. I understand your argument. Thank you. We'll give you one minute for rebuttal. Okay. Thank you. Good morning. The seminal case here is Remmer v. United States. That case is now 50 years old. With 50 years of case law to work with, appellant has yet to identify a single case that is factually similar to this case or factually analogous to this case in which it was held that a Remmer hearing was required. Appellant has also failed to deal with this Court's recent case of Tracy v. Palmateer, in which this Court held that a Remmer hearing is not required, even though in that case the indications of misconduct were significantly greater than they are in this case. In that case, you had jurors making improper or a report of jurors making improper statements. Here, jurors made no improper statements, did nothing improper. In fact, acted with perfect behavior. This is an excellent case. It is a Ninth Circuit case. Tell me, in your estimation, which Supreme Court case comes closest to the facts we have here in which we would apply the rule? Remmer. Remmer. And how would you argue that case to us that it does not require a hearing? Remmer was a case in which the Court held that a hearing was required, where there was a report of a juror having received a bribe. Obviously, this case is so far from that. Counsel, are there any Supreme Court cases that talk about juror apprehension or juror nervousness or fear of the defendant? Not of which I'm aware. And go ahead. How would Remmer apply here? Remmer has clearly established a United States Supreme Court precedent saying that when a juror, when there's a report of a juror having received a bribe offer, that you need to inquire about that. You need to find out about that. What we have here is jurors, quite understandably, at the end of their deliberations wanting to be assured that their identification will not be disclosed. I understand. Remmer really doesn't carry you very far. I understand Remmer's holding. And that indicates when the Court must move. But we've got the other side of the issue here of when the Court does not have to move sua sponte, to hold a hearing. And is there any guidance from any of the Supreme Court cases which would tell us what the rule is in applying that in a State habeas case? The answer to your second part of the question is I'm not aware of any. As for your first comment, I respectfully disagree. Remmer disposes of this case. This is, Remmer says, if you have this egregious situation, you have to inquire. This case is, we don't have anywhere close to that egregious situation. Therefore, you don't have to inquire. That's the colorable claim approach. Is there a colorable claim that the district court has, that the trial court has to look into sua sponte? Yes, that is the colorable claim approach. I'm not sure where that term, colorable claim, comes from. It may not come from Remmer. I don't remember. But that is the little label that courts have applied to it. Does the Court in that case say only in egregious situations the Court has to hold a hearing, or was that happened to be an egregious situation and the Court did hold a hearing or did not? I believe it was the latter. Yes. So it only tests the outside. It doesn't help us very much down the line unless there's some language of the Supreme Court that gives us more help. We know that you have to do it in an egregious situation. Do we know that you must sua sponte hold a hearing when there's something less than an egregious situation? Yes, we do know, because under AEDPA, you work by, we must work by clearly established United States Supreme Court precedent. And if the United States Supreme Court precedent has only gone to here, it's not going to reach what's over here. Well, doesn't our jurisprudence, though, tell us that if it can be logically extended, that's also included in the AEDPA rubric? I'm not aware of that. But even if it's true, it can't be logically extended in this situation. It doesn't have to be exactly on all fours in order to constitute clearly established Supreme Court precedent. Do you agree with that? The answer is yes. I do agree with that. Okay. So. It's not on all fours. It's not on any four. It's not. I interrupted you. I'm sorry. That's all right. I'm not sure I have anything more to say. If I haven't just. You interrupted me to say nothing. I believe I did, yeah. Thank you. Thank you, Counsel. Rebotto. I'd just like to address four points very quickly. The term colorable claim does come from Dyer. Another standard is in Tracy v. Palmateer. It's a three-part test, which, again, Tracy is a Ninth Circuit case, but it weighs the seriousness of the allegations, the nature of the allegations, and the credibility of the source. With regard to response. And once you balance that, does that tell you whether or not you get a hearing? Is that what the balancing test tells you? That tells you whether the duty to inquire is triggered. But duty to inquire is different from duty to hold a hearing. Would you agree? Well, under. Because the court in this case responded. I mean, it's not like the court did nothing. So how do you define duty to inquire? Well, I believe in Dyer, the court states that some sort of investigation or fact-finding should be launched, whether it amounts to a formal hearing or not. That is not necessary, as long as the judge does ask the jurors in some manner what the cause and effect of the particular bias may be. So in your view, in this case, the judge should have sent a note back to the jury asking what is your concern? What should the judge have done in this case, in your view? I believe the judge should have asked the jurors what was causing their fear and whether they could still remain impartial and fairly evaluate the facts. It wouldn't have to amount to a very formal and lengthy inquiry, but some inquiry was necessary and it was not launched in this case. This would be sua sponte, even though the defendant's attorney sitting there may conclude, I don't want this looked into, it's going to highlight something, it's going to prejudice my colleague, my client. The court should just move right in and hold the hearing, right? Well, that's the problem that defense counsel can run into and it's actually mentioned in Dyer. Defense counsel is put in a precarious situation in which if he pursues juror bias and the inquiry is clearly coming from defense counsel, he threatens alienating or offending the jurors who are soon going to decide the fate of his client. It's better that it comes from the trial judge who's not subject to that type of pressure. The lawyer can do it off the record. You can have an in-camera conference. That's not a question at all. The question is, it's an area where the lawyer can no longer decide for himself or herself what's best for the client. The judge is going to jump in and do it, which is maybe troublesome at times. And your view is the Supreme Court requires, even with an indication such as this, that they move in and hold a hearing, actually confront the jury with it, regardless of how the defense lawyer feels. That is the position, because I do believe that fair adjudication in criminal cases is in the interest of the court as well as the defendant and the prosecution. For example, let's say hypothetically the defendant had determined that the jurors were clearly biased in his favor. In that case, it should be the trial judge's duty to step in and determine whether that's the case or not. Again, just in the interest of fair adjudication of the case. Was the judge's response to the first inquiry adequate? I believe it was very adequate. So the problem then comes with the second inquiry, when the jurors send back a shorter note saying we're still concerned, thanks for addressing our concerns about the first thing, but we've now got concerns about the pieces of paper that defense counsel may have had in their possession. The judge sends back a form in blank and doesn't hear anything further from them. But he still had a duty to inquire, even though he hasn't heard any problems from them, and they come back with a verdict shortly? Well, the judge's first response, the very first sentence in the judge's first response is something to the effect of, I can pull the exact quote, but it's something to the effect of the defendant has never been permitted to access your personal information in any way. The jurors then come back with a second inquiry, although the first response from the judge had already directly addressed their inquiry. I think the second inquiry was irrational. At that point, the judge should have been put on notice that something else was happening in the deliberation room. What did the form in blank show? The blank form? Yeah. I don't know that it showed anything. The jurors asked if they could see a copy of the blank form, of the form that the defendant was shown during the voir dire, and the judge simply sent in a blank form. But they said even a blank one. Even a blank one. Right. However, the jurors also asked, there's still concern over whether the defendant has had access to our personal information. Sending in simply a blank form would not necessarily resolve that issue in the minds of the jurors. Well, if the blank form doesn't contain information, that seems to have been where their focus had narrowed after the judge's extensive response to their first question. The judge may have assumed that the jurors concluded based on his sending in a blank form that the issue had been resolved, but we don't know because no inquiry was launched to answer that question. Isn't there a possibility, then, that if the judge thought that the inquiry had been satisfied, that by conducting an inquiry that he only could have stirred things up and made things a whole lot worse? That the judge could have made things worse by pursuing the inquiry? Yeah. I guess that's possible, but I'm sure the judge could have framed the questions in a way that would have been relatively innocuous. He still had a duty to do that, even if the judge thought that he might be stirring things up. I believe he does have that duty, because at this point we're just left speculating as to what happened. And just very briefly, I'd like to address three points. First, Respondent argued that I had not cited a single case with a similar situation to what we have here. I do believe Angulo, which is cited in the opening brief and in the reply, has very similar facts to those here. Supreme Court case? It's a Ninth Circuit case. And I think his comments pertain to the Supreme Court. Okay. And as far as distinguishing Tracy, two points in Tracy that I believe can be distinguished here are that the Court in Tracy, in minimizing its perceived effects of the bias, stated that the bias was not caused by outside influences and existed, if at all, before the presentation of the evidence. Here we don't know the answer to those questions. The second and perhaps more important point in Tracy is that the bias was, the Court argued the bias was cured by a curative instruction by the judge. In this case, we didn't have a curative instruction. If anything, the judge's response substantiated the juror's fears of the defendant. And finally, I don't think Remmer disposes of this claim as contended by Respondent, because Remmer states specifically that if you cannot conclude based on an adequate record whether the jurors were biased, the case should be remanded to trial court for the appropriate inquiry. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court. The next case on calendar for argument is Natividad v. McGrath. Thank you.
judges: Wallace, Rawlinson, Bybee